**EXHIBIT "A"**

```
                                                    Page 96
 1   transaction -- transactional procedures.
 2   I did U-Haul rentals.  In addition to
 3   that, U-Haul dispatch and U-Haul returns.
 4         Q.    Did you have a uniform that
 5   said, Solar Transport, LLC?
 6         A.    Solar uniform?  Did they
 7   give us uniform?
 8               No.  It was more informal.
 9   They didn't give us any uniforms.
10         Q.    Did you have an
11   identification card that said, Solar
12   Transport, LLC?
13         A.    Yes.  I have a -- let me --
14   can I go get it?
15               MR. MIZRAHI:  Hannif, you
16         can answer the question.
17               THE WITNESS:  Yes.  I
18         have --
19               MR. MIZRAHI:  You can answer
20         the question.
21               THE WITNESS:  I have a
22         dispense -- the ID that is --
23         the -- you need an ID for the fire
24         license.  So yes.
```

Page 97

```
 1  BY MR. ZABELL:
 2          Q.    And does it say Solar
 3  Transport, LLC on that?
 4          A.    If you will allow me to get
 5  it --
 6          Q.    Sure.  You can get it.
 7          MR. MIZRAHI:  No.
 8          Hannif.  Just answer the
 9      questions that are being asked of
10      you, please.  Okay.  Don't
11      physically move.  Don't get up to
12      go anywhere.  You can just answer
13      the questions.
14          THE WITNESS:  Okay.  I just
15      want to be on point.  I don't
16      want --
17  BY MR. ZABELL:
18          Q.    And I just want you to be on
19  point.
20          A.    I don't want to answer a
21  question and I'm not correct or -- you
22  know, or seem as if I'm not being
23  truthful.
24          Q.    Did you ever receive any
```

Page 98

```
 1   documentation from a company called Solar
 2   Transport, LLC?  Yes or no.
 3           A.    If you give me five second,
 4   I can answer that question.
 5           Q.    Okay.  Take five seconds to
 6   answer it.
 7                 MR. MIZRAHI:  Objection.
 8           Objection to the form of that
 9           question.
10           Hannif.
11                 THE WITNESS:  Yes.
12                 MR. MIZRAHI:  Okay.  I just
13           want you to answer the question
14           that's being asked of you, please.
15                 THE WITNESS:  Okay.
16                 MR. MIZRAHI:  If there are
17           any documents that the other side
18           needs, they can make the request
19           for them.
20                 THE WITNESS:  Okay.
21                 MR. MIZRAHI:  I have to
22           review that request.  Once I
23           review that request, we will then
24           discuss the disclosure obligations
```

```
 1      if the documents have or haven't
 2      been disclosed.
 3              But for today, your job is
 4      not to produce any documents.
 5      Your job is to just answer the
 6      questions to the best of your
 7      ability.
 8              THE WITNESS:  All right.
 9              So for clarity -- because
10      I'm not understanding this
11      question.
12              For clarity, I work for
13      278 Greenpoint Avenue, which is at
14      Sonomax.  I work at 10 Malcolm X
15      Boulevard.  I work at 10 Porter
16      Avenue and 1127 Flushing Avenue.
17              So if those entities are
18      under Solar -- under the Solar
19      LLC, yes is the answer.
20  BY MR. ZABELL:
21      Q.      But do you know if those
22  entities are under the Solar Transport,
23  LLC?  Yes or no.
24              MR. MIZRAHI:  Objection to
```

1   the form of that question. It
2   calls for a legal conclusion.
3   It's also been asked and answered
4   several times.
5           Hannif, you can answer the
6   question.
7           THE WITNESS: Yes.
8   BY MR. ZABELL:
9       Q.   Yes what?
10      A.   Yes to your question.
11      Q.   Do you know what you're
12  saying yes to?
13      A.   You are asking me if all
14  those entities are under Solar -- the
15  Solar enterprise.
16          And I'm saying yes, if -- if
17  all the companies I work for are umbrella
18  of the corporate company's licensing
19  name, yes is going to be the answer.
20      Q.   Right. But how do you know
21  that those companies --
22      A.   I work --
23      Q.   You have to let me finish,
24  Mr. Bryan.

Page 101

```
 1          A.    Okay.
 2          Q.    How do you know that the
 3   companies that you work for are under
 4   Solar Transport, LLC?
 5          A.    Because it's documented.
 6          Q.    Where?
 7          A.    On the paperwork that I
 8   signed that my lawyer has been preparing,
 9   and I make signatures and stuff.  So it's
10   on the documents, the legal documents.
11                So once it's on the
12   documents, it has to be yes, because I
13   signed legal documents with that name on
14   it.
15          Q.    What legal document did you
16   sign with that name on it?
17          A.    My disposition for my
18   lawyer.  The documents that my lawyer
19   prepared for me.
20                That's why -- that's why --
21   I know you're working for Sam at the
22   moment and Sam is not with you, but you
23   prepare for him documents.  Right?
24          Q.    Only truthful ones.
```

Page 102

1  A. Yeah. So that's it,
2  basically.
3  And I hope it's -- I hope
4  the documents are truthful that you're
5  doing for Sam. I'm not just saying
6  truth.
7  Q. So are you saying that the
8  only documents that you're aware of that
9  indicate that the companies that you work
10 for are under Solar Transport, LLC, were
11 the documents that were created by your
12 lawyer?
13 A. I have -- I have my
14 license -- my ID with my gas station ID
15 with the company's name and address on it
16 also.
17 Again, your -- for the
18 answer for your question is 10 Malcolm X
19 Boulevard, 1127 Flushing Avenue, 276
20 Greenpoint Avenue, and 10 Porter Avenue.
21 So if Solar and -- is
22 under -- is the umbrella for all those
23 companies, my answer will be yes. I have
24 to stick to the answer which is yes.

1      Q.    Exactly. But you don't know
2  if those companies -- please let me
3  finish.
4            You don't know if those
5  companies are under Solar Transport, LLC.
6      A.    Yes, they are, sir, because,
7  guess what, if Sam is the owner of Solar,
8  and the names are -- name changes are
9  different clauses involved, at the end of
10 the day, we all know the answer is yes.
11           So let us move forward, boss
12 man, please.  Let us go forward.
13           You're not -- you're not
14 comfortable?
15     Q.    I'm not comfortable with the
16 answer that you gave, so we need to
17 further clarify it.
18           Is it your testimony that
19 you have an ID that says you work for
20 Solar Transport, LLC?  Yes or no.
21     A.    I have an ID working for
22 10 -- for the 10 Porter Avenue, 10
23 Malcolm X, 1127 Flushing, and Sonomax.
24     Q.    Okay.  And Sonomax is the

Page 104

```
 1  name that's on that ID; correct?
 2       A.    Sonomax.  Yes.  No.  The
 3  name on it is address, the address of the
 4  business where -- the work -- the
 5  workplace that I work, that's -- that's
 6  only stated on it.  But the letter that I
 7  brought to them have it.
 8       Q.    Well, let me ask you a
 9  question.  Did you ever receive a
10  paycheck for Solar Transport, LLC?
11       A.    Yes.  I think my
12  lawyer have -- I gave my lawyer one of
13  the slips.
14            THE WITNESS:  You still have
15       the slip, Mr. Jason, the slip I --
16       the pay slip I gave you?  You have
17       it?
18            MR. MIZRAHI:  Let's just
19       stick to the questions that are
20       being asked.
21            THE WITNESS:  Yes.  Yes,
22       sir.
23  BY MR. ZABELL:
24       Q.    So is it your testimony that
```

Page 105

1  you have a pay slip from Solar Transport,
2  LLC?  Yes or no.
3       A.   Yes.
4       Q.   Okay.  Do you have a -- is
5  that the only company that you received a
6  pay stub from?
7       A.   Yes.
8       Q.   I see.
9            Now, when you worked at
10 those four locations, did you manage the
11 location?
12      A.   Operations, yes.
13      Q.   So you managed the
14 operations at the stores?
15      A.   Yes.  Especially at 10
16 Malcolm X and 10 Porter Avenue.
17      Q.   Well, could you explain to
18 me how you managed them?
19      A.   Manage as it relates to the
20 operational functions and the
21 responsibilities of ensuring that the
22 customers, they pump the fuel in a safely
23 manner.
24           In addition to that, when

```
                                            Page 179
 1   this lawsuit?
 2       A.   Witnesses.  No.
 3       Q.   Okay.  Do you have any pay
 4   stubs?
 5       A.   Yes.
 6       Q.   Do you know why those stubs
 7   were not provided in discovery?
 8       A.   I couldn't tell you.
 9       Q.   What's that?
10       A.   I couldn't tell you why you
11   didn't get any pay stub.  But I have pay
12   stubs.
13       Q.   Did you provide them to your
14   attorney?
15       A.   I think I gave him one,
16   initially.  He should have one of them.
17       Q.   Do you have other pay stubs?
18       A.   Yeah.  I'll have to look for
19   them, though.  But I should have.  I
20   don't know if I threw them -- there
21   should be somewhere in my documents.
22   Yeah.
23       Q.   So how many pay stubs do you
24   think you have?
```

Page 180

```
 1        A.    A good amount.  I couldn't
 2   tell you exact amounts.
 3        Q.    Well, I'm going to reserve
 4   my right to conclude this deposition
 5   until you provide those documents.  They
 6   should have been provided, and they have
 7   not been.
 8              Did you ever email, text
 9   message, or WhatsApp with Sam?
10        A.    Every day.
11        Q.    Okay.  Do you have those
12   communications?
13        A.    That was in the group.  I
14   think they -- that was in the group chat.
15              I think -- I have to go
16   through my phone.  But that was like when
17   we were doing -- discussing oper- --
18   daily operations, I used to have to send
19   Sam the fuel amount.  But I'm not in the
20   group chat anymore because they kicked me
21   out.
22        Q.    Did you ever look for those
23   conversations?
24        A.    I can look for them, but I
```

```
                                              Page 181
```

1   was in a group chat. I didn't save those
2   messages.
3           Q.   Did you ever look for them?
4           A.   I didn't look for any
5   because they kick me out the group chat.
6   I wasn't saving them either. It was a
7   WhatsApp group chat where everybody
8   discuss daily operation.
9           Q.   Do you have any documents
10  that show that you worked for Solar
11  Transport?
12          A.   Yeah. Home Base.
13          Q.   I'm sorry. Did you say Home
14  Base?
15          A.   Yeah. The times that I
16  clocked in showed that I worked for them.
17          Q.   No, no. Any documents
18  showing that you worked for Solar
19  Transport.
20          A.   I'll have to look.
21          Q.   Have you looked yet?
22          A.   The pay stubs.
23          Q.   So you think you have pay
24  stubs from Solar Transport?

Page 182

1  A. Mm-hmm.
2  Q. You need to use your words.
3  A. Yes, sir.
4  Q. Okay. Do you have any
5  documents showing that you worked for
6  Greenpoint Industrial Services Corp?
7  A. I'll have to source them.
8  The answer will be for all of them. If
9  you are asking me for the documents, I
10 have to source them, the pay stubs.
11 Q. Where do you think you have
12 them?
13 A. Did I throw them away? I
14 should have some of them. And some of
15 them should be bank statements.
16         I probably have to go to
17 Bank of America, have them print out some
18 statements. Yeah.
19         I should have, though. They
20 should be in my documents, where I keep
21 my documents. Or I have to go the Bank
22 of America because I get direct deposits,
23 and I have them print out the bank
24 statements also.

Page 183

1   MR. ZABELL: Okay. Jason,
2   I'm making a demand for those pay
3   stubs, for those communications.
4   We previously asked for them
5   in discovery. You did not provide
6   them.
7   I am reserving my right to
8   conclude this deposition once we
9   receive those documents. And
10  we'll be addressing it with the
11  court as well.
12  MR. MIZRAHI: We'll take
13  your request under advisement, if
14  you would like to put in writing.
15  MR. ZABELL: It's already in
16  writing, but I understand that
17  you're not all that big on
18  writing. You're not that
19  thorough.
20  MR. MIZRAHI: No need to be
21  snide. No need for snide
22  comments.
23  MR. ZABELL: No. It's just
24  a matter of thoroughness, because

Page 184

1  this is the practice of law and
2  details matter.
3      MR. MIZRAHI: Have you asked
4  your client for the production of
5  WhatsApp communications that he
6  would have had with the plaintiff,
7  Saul?
8      MR. ZABELL: No. I didn't
9  know it existed.
10     MR. MIZRAHI: You have not
11 asked him whether he has any
12 WhatsApp communications?
13     MR. ZABELL: Well, you're
14 now asking me to go into
15 attorney/client privilege
16 communications, and I'm not
17 waiving his right. Not for you.
18     MR. MIZRAHI: He hasn't
19 provided you with those documents
20 himself?
21     MR. ZABELL: Again, my
22 client is not being deposed today.
23     If and when you see fit to
24 depose my client, assuming you

Page 185

1  still can, you can ask him those
2  questions.
3       But understand, this is the
4  practice of law and details
5  matter.  So when you make certain
6  representations for your client --
7  that your client contradicts, it's
8  problematic.
9       But you know that, or
10 should, at least, at this point.
11      So at this point, for today,
12 the deposition is concluded.  I
13 will be following up on those
14 records.
15      And I wish you a very happy
16 holiday season.
17      MR. MIZRAHI:  Madam
18 Reporter, just a note for the
19 record.  This is Attorney Jason
20 Mizrahi from Levin-Epstein &
21 Associates, P.C., counsel for the
22 plaintiff.
23      Plaintiff's counsel
24 respectfully reserves their right

Page 186

1     to request a copy of the
2     transcript pursuant to the Federal
3     Rules of Civil Procedure.
4         MR. ZABELL: Yeah, whatever
5     that means.
6         Thank you, Margaret.
7         COURT REPORTER: Okay.
8     Thank you.
9         - - -
10        (Whereupon, the remote
11    deposition concluded at 2:50 p.m.)
12         - - -
13
14
15
16
17
18
19
20
21
22
23
24